# NEUFELD, O'LEARY & GIUSTO

ATTORNEYS AT LAW
60 East 42nd Street
Suite 4600
New York, New York 10165

TELEPHONE:
(212) 986-0999
(631) 549-1717

FACSIMILE:
(212) 986-6341

LONG ISLAND OFFICE
225 OLD COUNTRY ROAD
MELVILLE, NY 11747-2712

Please Reply to:
NEW YORK

March 3, 2025

**VIA ECF**

The Honorable Frederic Block, Senior Judge
United State District Court
Eastern District of New York
225 Cadman Plaza E
Brooklyn, New York 11201

Re:  *SG Alternative Title Trust 2021-MF-1 a/k/a Saluda Grade Alternative TitleTrust 2021-MF1 v. Michelle Zell, Ross Wigon, Riverside Abstract, LLC and Shaul C. Greenwald*
<u>Civil Action No. 1:25-cv-00648-FB-VMS</u>

Dear Judge Block:

We represent Plaintiff in the referenced case.

**Background**
This is a $9,423,384.84 appraiser professional gross malpractice, title company malpractice, and mortgage fraud case.  This case arises from the flip purchase and rehabilitation of 111 West Pine Avenue, Orange County, Texas ("Property") funded by a $13,741.727.50 loan ("Loan").  The Property is a 40-building multifamily garden apartment complex containing a mix of one-story and two-story buildings and 200 residential units.  Shortly after the Loan was made, 82 units were so decrepit as to be condemned and razed at the direction of the local governmental authority.

**Mortgage Loan & Appraisal**
The Property secures the Loan.  The Loan was made to a New York borrower based on, inter alia, a percentage of the average retail value of the Property, and assigned to the Plaintiff.  New York based appraiser defendants valued the Property ("Appraisal") *As Is* as of January 24, 2022, at $18,400,000.  Plaintiff's expert opined that the Appraisal was grossly non-compliant with the industry standards – USPAP[1] - and inflated the Property by a shocking $12,565,400.00 as of January 24, 2022!  The Loan would not have been made had the Appraisal valued the Property

---

[1] Uniform Standards of Professional Appraisal Practices effective at the time of the Appraisal.  Compliance with the USPAP standard of care is expressly identified in the Appraisal.

## NEUFELD, O'LEARY & GIUSTO

The Honorable Frederic Block, Senior Judge
March 3, 2025
Page **2** of **3**

anywhere near $5,834,600. Due to the significantly undersecured Loan that resulted from the grossly negligent Appraisal, the Loan holder is damaged by the significant Loan deficiency which exists after the collateral is liquidated. If the Property had been worth the amount identified in the Appraisal, then no Loan losses would have occurred.

**Flip & Title Company**

Lender hired the title company defendants to close the Loan and sale of the Property from Sabine Holdings, LLC to Sabine Portfolio LLC ("B to C Sale"). Unbeknownst[2] to the Lender, the title defendants were also hired by Sabine Portfolio LLC to close Sabine Portfolio LLC's purchase of the Property from CAF 2019-3 Ryer 6 TX, LLC ("A to B Sale"). The title company defendants knew that the Property was to be flipped from CAF 2019-3 Ryer 6 TX, LLC through Sabine Portfolio LLC to Sabine Holdings, LLC ("Flip"), and they received at least $81,445.00 for their services.

Upon information and belief, the title defendants used settlement statements to close the A to B Sale. Upon information and belief, the title defendants hid the A to B Sale Settlement Statement from the Lender and its counsel who represented the lender for the Loan closing. Upon information and belief, the title defendants improperly filled out the Loan's B to C Sale settlement statement in that they, inter alia, failed to identify that significant Loan proceeds would be transferred from the B to C Sale to fund the A to B Sale *after the B to C sale closed*[3] and failed to identify that Loan proceeds were being used to pay off the lien held by CAF 2019-3 Ryer 6 TX, LLC. Despite several requests,[4] the title defendants have refused to voluntarily disclose to the Plaintiff, the A to B Sale settlement statement or accounting documents for the A to B Sale that it is required to maintain.

Upon information and belief, the title defendants closed, without proper disclosure, the B to C Sale before the A to B Sale – this means that B sold the Property before it owned the Property. Upon information and belief, the title defendants used the Lender's funds to fund the A to B Sale, thereby closing the A to B Sale without *Good Funds* as defined in Texas Department of Insurance ("TDI") Basic Manual of Title Insurance, Section IV, Procedural Rule P-27(A.)(1.), a violation of Texas Insurance Code § 2651.202 and TDI Procedural Rule P-27(A.)(1.).

Lender relied on the Title Company and Title Attorney to protect its interests regarding the Loan. Lender would not have funded the Loan and the lender's counsel would not have approved the

---

[2] Upon Information and belief, according to the title company's own policies and procedures, as well as those of the title underwriter Fidelity National Title Insurance Company ("Fidelity"), there was never a clear or effective disclosure of the transaction's nature as 1) a flip 2) by related companies, and 3) without good funds. Title defendants acted at all times as a Fidelity agent, in the scope and course of their agency when, inter alia, issuing title insurance and commitment Policy No.: 128171-1-RANTL-43022A-2022.2744343-226914215 and when closing the B to C Sale.

[3] Upon information and belief.

[4] And the imminent requirement of disclosure of these documents per Fed. R. Civ. P. 26(a)(1)(A)(ii).

# NEUFELD, O'LEARY & GIUSTO

The Honorable Frederic Block, Senior Judge
March 3, 2025
Page **3** of **3**

Loan, had either known the true nature of the 1) Flip, 2) by related companies, 3) without Good Funds, and/or (4) with the B to C sale preceding the A to B sale, and the Loan holder would not have suffered the Loan deficiency damages of $9,423,384.84, plus interest.

### **Limitations**

The statutes of limitations ("SOL") regarding appraiser malpractice ("APM") is governed by *ShareStates Invs., LLC v Creagh & Assocs, Inc.*, 187 A.D.3d 961 (2d Dep't 2020). The February 9, 2022 Loan date starts the SOL. This lawsuit, filed on February 5, 2025, was within the CPLR 214(6) 3-year SOL (*see Early v Rossback*, 262 AD2d 601, *revd on other grounds*, 95 NY2d 290).

### **Limited Liability Clause**

Limited liability clauses are not enforceable in instances of gross negligence (*Sommer v. Federal Signal Corp* 79 N.Y.2d 540 at 553 (1992). Plaintiffs pled gross negligence.

### **Damages**

In appraiser malpractice cases, New York recognizes damages existing when the undersecured Loan was made. (See *Creagh*, supra, *Loan Trust v Appraisal Source, Inc.,* 2024 N.Y. Misc. LEXIS 25714 at *8 (Sup. Ct. N.Y. Co. December 20, 2024), *Advanced Financial Services, Inc. v. Associated Appraisal Services, Inc.*, 79 Conn.App. 22, at 33 (Conn. App. 2003) and *FDIC v. Hoyle*, 2012 U.S. Dist. LEXIS 130957 (E.D.N.Y. 2012). See also *Stewardship Credit Arbitrage Fund LLC v. Charles Zucker Culture Pearl Corp.*, 2011 N.Y. Misc. LEXIS 2119 (Sup. Ct. N.Y. 2011) and *Rodin Properties-Shore Mall, N.V. v. Ullman*, 264 A.D.2d 367 (1st Dep't 1999).)

Thank you for the Court's attention to this matter.

Respectfully yours,

*/s/ Michael J. Giusto*

Michael J. Giusto

cc:   The Honorable Vera M. Scanlon
      William M. Rudow, Esq., Christopher T. Scanlon, Esq., Djordje Caran, Esq., Kaufman, Jessica, Esq., Brian Kidd, Esq., David B. Lincoln, Esq.